UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

---

CLEAR CHANNEL OUTDOOR, INC.,

        Plaintiff,

        v.                                  Case No. 04-C-0030

INTERNATIONAL UNIONS OF
PAINTERS AND ALLIED TRADES
AFL-CIO LOCAL UNION 770,

        Defendant.

---

DECISION AND ORDER
DENYING PLAINTIFF'S MOTION TO VACATE ARBITRATION AWARD, GRANTING
DEFENDANT'S MOTION TO AFFIRM AWARD, AND DISMISSING CASE

On January 13, 2004, plaintiff Clear Channel Outdoor, Inc. (Clear Channel) filed this suit against International Unions of Painters and Allied Trades AFL-CIO, Local Union 770 (Local 770) seeking to vacate a December 17, 2003, arbitration award ordering Clear Channel to reinstate an employee. Clear Channel had fired the employee after he was observed working on a billboard without his safety belt and harness attached. Local 770 grieved the firing, which led to the arbitration award favoring Local 770. The case was assigned to Judge Thomas J. Curran, and the parties fully briefed their cross-motions before the case was transferred to this court.

Although not titled as such, the briefing will be treated as cross-motions for summary judgment. Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment

as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Inferences are drawn in favor of the party against whom a particular issue in the motion under consideration is asserted. *See O'Regan v. Arbitration Forums, Inc.*, 246 F.3d 975, 983 (7th Cir. 2001). Because the parties agree that there are no genuine issues regarding the arbitrator's factual findings, summary resolution is proper as a matter of law.

FINDINGS OF FACT

Patrick Rogney was employed by Clear Channel and his job was to work on billboards. (Arb. Dec., p. 2) Local 770 represents painters and construction crew employees who work on billboards for Clear Channel, and Rogney is a Local 770 bargaining unit member. (*Id.*)

In the Spring of 1999, Clear Channel's Milwaukee branch began a more stringent enforcement of the safety rules with respect to employees utilizing proper fall protection equipment and being tied-off at all times to safety cables when working on an outdoor structure. What changed at that time is that Clear Channel began to distinguish between direct and indirect violations. (Arb. Dec., p. 9) A direct violation would be an instance when the employee failed to wear proper fall protection equipment or failed to be hooked up or tied=off at all times while working on a structure. (*Id.*) Direct violations resulted in discharge.

After this change, the only living employee who failed to hook up to a safety cable while on a structure was discharged. (*Id.* at 9-10; Tr. 53-54; Jt. Tr. Ex. 2; Tr. Ex. 8) Gary Cambpell, one of Rogney's coworkers, was killed in 2001 after he failed to attach himself with

2

a lanyard to a billboard safety cable. (Arb. Dec., pp. 2, 11; Tr. 47-48) Local 770 had in no way objected to the safety rule policy. (Tr. 55)

On June 1, 2001, Clear Channel (f/k/a Eller Media/Milwaukee) and Local 770 executed a Collective Bargaining Agreement (CBA). (Jt. Tr. Ex. 1)[1] The CBA contains a grievance procedure which culminates in final and binding arbitration. (*Id.*)

The CBA contains the following provisions relevant to the award:

**Article VI  DISCIPLINE AND DISCHARGE**

Section 1: The Union recognizes and acknowledges that the Employer has the duty of maintaining good discipline among its employees because the Employer is responsible for the efficient operation of its business.

Section 2: The Employer shall have the right to discipline and/or discharge Employees for just cause.

Section 3: In the case of any offense for which an Employee may be discharged, the Employer may, in its sole discretion, impose a lesser penalty.

Section 4: The following shall constitute causes for discharge or other disciplinary action, and their enumeration here is by way of illustration and shall not be deemed to exclude or restrict the Employer's right to discharge Employees for any other just cause (emphasis added) . . .

(b) Violation of Employer rules and safety rules.

**Article VII  GRIEVANCE PROCEDURE**

Section 1: A grievance is defined as a claim or dispute with the Company by an Employee or Employees, including an alleged violation by the Company, of the terms of this Agreement. When a grievance arises, there shall be no interruption of work or other violation of this Agreement of any kind and account thereof. The Employer and the Union agree that they will settle all grievances

---

[1]Joint exhibits from the arbitration hearing are cited to as Jt. Tr. Ex. \_\_\_\_.

3

that may arise regarding the interpretation or application of any of the terms of this Agreement in the following manner:

c.    ....The Arbitrator shall interpret and apply this Agreement in an effort to settle this dispute, but the Arbitrator shall have no power to add to, subtract from, or otherwise modify the terms fo this Agreement, and the Arbitrator's decision shall be final and binding on the parties to the Agreement, and the employee involved.

**Article XVI SAFETY AND HEALTH**

Section 1: When protective devices and other safety equipment are required by OSHA and/or the Employer, their use by Employees is mandatory.

Section 2: Safety requirements of OSHA and the Employer must be complied with and safety equipment as furnished by the Company must be used or reprimand steps as follows will be in effect:

1st Offense - Written reprimand shall be given to the Employee and a copy sent to the Union Local.

2nd Offense - Five (5) days suspension without pay.

3rd Offense - Discharge for cause.

Section 3:  If any Employee fails to use, in the manner prescribed by OSHA and /or the Employer, safety belt and/or harness and /or safety line equipment, which is provided and the use of which is required by OSHA and/or the Employer, the Union, and the Employee agree that this is a safety offense of such serious matter that the Employer shall proceed directly to the discipline step as set forth above as "3rd Offense" and the Employee may be immediately discharged.

Clear Channel conducted mandatory safety retraining on an annual basis usually in July of each year.  (Arb. Dec., p. 2; Tr. 48) On July 23, 2002, Rick Schoenholtz conducted training and Rogney attended.  (Tr. 48-49; Tr. Ex. 4)  On July 23, 2002, Rogney signed a "Personal Fall Protection Equipment" statement acknowledging instruction in the use and care of fall arrest systems and equipment and certified that "I understand the use of the

4

body harness and other personal fall arrest equipment is mandatory and is to be used in the manner prescribed by OSHA and/or the Company." (Tr. Ex. 5)

On July 23, 2002, Rogney signed another statement in which he acknowledged:

> Further, I have been trained in the use of the described personal fall protection equipment and understand that improper use or not using the prescribed equipment in a safety-sensitive environment will be grounds for immediate termination of employment. (Tr. Ex. 6)

At that time, Rogney was the shop steward as well as a Trustee for Local 770. Moreover, he did not object to signing the above-mentioned statements. (Tr. 51-52; Tr. Exs. 5, 6)

On April 2, 2003, Rogney was working with a crew changing a sign at Capitol Drive and Green Bay Avenue. (Arb. Dec., p. 2) Rogney was wearing his full body harness as required by the company's safety policy. (*Id.*) While working on the sign he had his lanyard attached to the cable. He unhooked the lanyard when going around the other member of the crew and then failed to reattach it. (Arb. Dec., pp. 2-3)

Clear Channel/Milwaukee President Paul Sara was driving by a company-owned billboard on Capitol Drive, and Sara watched Rogney and several other employees for approximately eight minutes. (Arb. Dec., pp. 2-3; Tr. 24, Tr. Ex. 1) Sara observed that Rogney and another employee were on the billboard platform without being hooked up to the billboard safety cable. (Arb. Dec., p. 3) The platform on the structure at the corner of Capitol and Green Bay Road on which the employees were working is 18 feet off the ground. Sara did not speak to the employees and did not tell them to reattach their lanyards. (Arb. Dec., p. 3) However, Sara called his Operations Manager Rich Schoeholtz and advised him of the situation. They both agreed that Rogney and Jacobi were in direct violation of Company safety rules and the CBA. (Tr. 28-29)

Schoenhotz, and supervisor Tom Riley met with Rogney and told Rogney what Sara had observed at the structure at the corner of Capitol Drive and Green Bay Road earlier that day. (Tr. 42-43) Neither Rogney nor the union have disputed that Rogney was violating Clear Channel's safety rules while being unhooked on the Capitol Billboard location, and Rogney offered no defense for his actions. (Tr. 80-81; Arb. Dec., p. 7) Rogney and his co-worker, Jacobi were suspended indefinitely at that time pending further investigation into the matter. On April 4, 2003, Schoenholtz discharged Jacobi and Rogney.

On April 20, 2003, Local 770 filed a grievance protesting that the discharge of Rogney was not with just cause. (Compl., Ex. 3) The parties selected Arbitrator Frederic Dichter to arbitrate the grievance, and submitted written briefs for his consideration. (Arb. Dec., p. 1) The parties agreed upon the following issues: "Did the Employer have just cause to discharge the Grievant? If not what is the appropriate remedy?" (*Id.*) Arbitrator Dichter conducted a hearing in the matter on September 10, 2003, and later issued his award finding no just cause for the termination but just cause for a six-month suspension.

CONCLUSIONS OF LAW

A district court sets aside an arbitration award only in "very unusual circumstances." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 942, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995). The arbitrator's decision must be upheld as long as it "draws its essence from the collective bargaining agreement" and is not merely the arbitrator's "own brand of industrial justice." *United Paperworkers Int'l Union et al. v. Misco, Inc.*, 484 U.S. 29, 36, 108 S. Ct. 364, 98 L. Ed. 2d 286 (1987) (quoting *United Steelworkers v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 596, 80 S. Ct. 1358, 4 L. Ed. 2d 1424 (1960)). An award does not draw its essence from the collective bargaining agreement "when the arbitrator must have

based his award on some body of thought, or feeling, or policy, or law that is outside the contract." *Arch of Illinois v. District 12, United Mine Workers of America*, 85 F.3d 1289, 1292 (7th Cir. 1996), quoting *Polk Bros. v. Chicago Truck Drivers Union*, 973 F.2d 593, 597 (7th Cir. 1992).

The Seventh Circuit Court of Appeals has described the limited role of this court as follows:

> It is abundantly clear that it is the arbitrator who is behind the driver's wheel of interpretation, not the court. Great deference is paid to an arbitrator's construction and interpretation of an agreement. It is elementary that the "question of interpretation of the collective bargaining agreement is a question for the arbitrator." *Enter. Wheel*, 363 U.S. at 599, 80 S. Ct. 1358. "It is the arbitrator's construction which was bargained for . . . [and] the courts have no business overruling him because their interpretation of the contract is different . . . " *Id.* "[I]t is only when the arbitrator must have based his award on some body of thought, or feeling, or policy, or law that is outside the contract (and not incorporated in it by reference) that the award can be said not to draw its essence from the [CBA]." N. Ind. Pub. Serv. Co., 243 F.3d at 347 (internal quotation omitted). "Thus, we will vacate only if there is no possible interpretive route to the award." *Id.* Significantly, "[w]e resolve any reasonable doubt about whether an award draws its essence from the [CBA] in favor of enforcing the award." *Id.*

*Dexter Axle Co. v. International Association of Machinists & Dexter Axle Co. v. International Association of Machinists & Aerospace Workers, Dist. 90, Lodge 1315* 418 F.3d 762 (7th Cir. 2005),

Acknowledging that this court's review is extremely limited, Clear Channel nevertheless maintains that the award "fails to draw its essence from the CBA and violates public policy." According to Clear Channel, the CBA in this case: (1) expressly reserves solely to the management the right to discipline and discharge; (2) explicitly states that

7

violating the Company's safety rules is just cause for the discharge; and (3) explicitly prohibits the arbitrator from modifying, adding to, or subtracting from the terms of the CBA.

In his award, the arbitrator first discussed the relevant section of the CBA, which provides that an employee "may be immediately discharged" for failing to use the safety belt or harness as required by OSHA and/or the employer. However, he noted that this is not a compulsory provision. The arbitrator concluded that there is discretion under the provision because of the word "may." He further noted that Article VI, Section 1, limits the right of the Employer to "discipline and/or discharge Employees" by requiring just cause, while Article VI provides that the Employer may "<u>in its sole discretion,</u> impose a lesser penalty" for serious violations. This was troubling to the arbitrator inasmuch as the provisions appeared inconsistent. The arbitrator specifically stated that it was his task to interpret how the sections should be read together.

The arbitrator resolved the "inconsistency" by determining that the word "may" implies that under certain circumstances a lesser penalty may be appropriate. Moreover, the Employer agreed that it would not discharge without just cause, and that determination includes consideration of whether the most serious penalty should be imposed. Article VII states that the Arbitrator's role is to "interpret and apply the Agreement," and therefore "just cause" must be interpreted.

Based on this interpretation, the arbitrator analyzed the grievance as follows:

> OSHA Rules mandate that employees must use safety harnesses when working at high elevations. The Employer has also clearly told its employees that hooking up to the cable is a must and failure to do so will be treated very seriously. Between the OSHA Rules and the constant training, this Arbitrator would be inclined to agree with the Employer that this offense falls into the category of offense that negates the need for progressive discipline. It is

8

> serious and as was seen from the death that occurred the year before, failure to comply with the Rule can have a disastrous effect. Grievant's attempt to categorize this as a small mistake is misplaced. It is far more than a small mistake. The Employer decision to treat the offense as grounds for discharge is understandable given this history. If that were all the facts, discharge may very well have been proper even with Grievant's long years of service. However, there is more. The Employer has professed that it treats this offense so seriously because of the safety hazard it poses. If that is so, the Arbitrator has a very hard time understanding how its management level personnel can sit and watch an employee perform this unsafe act for eight minutes and do nothing. Ignoring the safety aspect of the event while it is happening and while it is continuing to pose a safety risk and then firing the Grievant with his perfect record is too incongruous for this Arbitrator to reconcile. The two acts simply cannot be meshed together.

Accordingly, the arbitrator concluded that to sustain the discharge would treat the offense more seriously than the Employer did at the time the offense was committed. "The perfect record of Grievant, his long tenure and the fact that he was wearing the harness and had utilized it on the job earlier coupled with the inaction of the Employer make discharge too severe of a penalty in this case."

The only question for this court is whether the arbitrator interpreted the CBA. *Intl. Union of Operating Engineers, local 139, AFL-CIO v. J.H. Findorff & Son, Inc.*, 393 F.3d 742, 745 (7th Cir. 2004). It is not whether the arbitrator erred, "clearly erred," or "grossly erred." *Id.* As the Seventh Circuit Court of Appeals has reminded this court, "there is no plain meaning exception to the normal rule that an arbitrator's power to decide includes the power to err." *Id.* After all, "[A]rbitrators, often chosen because of their expertise in the industry, may see nuances that escape generalist judges. Persons steeped in the specialized language of a trade, or the business norms against which the language was written, often eschew 'plain

meaning' in favor of context, while generalists use a more text-bound approach because that is easier and less error-prone for outsiders." *Id.*

Here, the parties asked the arbitrator to consider whether the penalty was too severe, and he interpreted CBA in answering the question. Regardless of whether his interpretation was strained or even a serious error, the award must stand. Another result is not required, irrespective of the cases from this circuit cited by Clear Channel. For example, Clear Channel mentions *Arch of Illinois v. District 12, United Mine Workers of America*, where the Seventh Circuit ruled that an award "must unambiguously reflect that the arbitrator based his decision on non-contractual grounds" before it would be rejected. For example, an arbitrator could not find just cause for the discharge and reinstate for fairness. 85 F.3d 1289, 1293 (7th 1996).

Here, arbitrator Dichter found "just cause to sternly discipline" but never explicitly found just cause to discharge. In *Intl. Ass'n of Machinists Dist. No. 8 v. Campbell Soup Co.*, 406 F.2d 1223, 1227 (7th Cir. 1969), the Seventh Circuit rejected an employer's motion to vacate an arbitration award reinstating a discharged employee. The court concluded that the arbitrator was interpreting, not ignoring, the provisions of the agreement regarding the employer's rights and could take into consideration the nature and extent of the offense. *Id.*, at 1226. A similar approach was taken by the arbitrator in the case at bar.

Clear Channel asserts that the arbitrator's award falls with the legal exception that makes unenforceable "a collective bargaining agreement that is contrary to public policy." *W.R. Grace & Co. v. Local Union 759, International Union of United Rubber, Cork, Linoleum and Plastic Workers of America*, 461 U.S. 757, 766, 103 S. Ct. 2177, 76 L. Ed. 2d 298 (1983). Accordingly, Clear Channel maintains that the award, on its face, violates and is in explicit

10

conflict with federal laws and regulations regarding workplace safety. For example, there is a federal workplace safety requirement that individuals working more than six feet off the ground must be secured to a safety line.

> OSHA regulations state as follows:
>
> Each employee on a walking/working surface (horizontal and vertical surface) with an unprotected side or edge which is 6 feet (1.8 m) or more above a lower level shall be protected from falling by the use of guardrail systems, safety net systems, or personal fall arrest systems. 20 C.F.R. § 1926.501(b)(1).

Clear Channel could be fined up to $70,000 per first violation of failing to ensure that individuals are properly protected from falling. 29 U.S.C. § 666. Further, employers guilty of OSHA violations that result in an employee's death can be sentenced to imprisonment. *Id.*

The law requires that any such policy must be "explicit" and "ascertained by reference to the laws and legal precedents, not from general considerations of supposed public interests." *Id.* Significantly, the issue is not whether the employee's failure to wear the harness violates public policy but whether the order to reinstate does. *Eastern Associated Coal Corp. v. United Mine Workers of America, District 17 et al.*, 531 U.S. 57, 58, 121 S. Ct. 462, 148 L. Ed. 2d 354 (2000).

Consistent with the Supreme Court's reasoning in *Eastern Associated Coal Corp.,* the court finds that the award does not contravene public policy. Clear Channel is correct that there is a strong federal interest in workplace safety. However, it does not necessarily follow that reinstatement after a six-month suspension condones the failure to wear a harness or ignore the safety risks. Whether a reasonable person could disagree as to whether reinstatement or discharge is the more appropriate remedy is not the court's

11

concern. *See Wyman-Gordan Co. v. United Steelworkers of America, AFL-CIO*, 613 F. Supp. 626, 632 (N.D. Ill. 1985).

Now, therefore,

IT IS ORDERED that plaintiff's motion to vacate award is denied.

IT IS FURTHER ORDERED that defendant's motion to confirm award is granted.

IT IS FURTHER ORDERED that this case is dismissed.

Dated at Milwaukee, Wisconsin, this 6th day of June, 2007.

                                              BY THE COURT

                                              s/ C. N. CLEVERT, JR.
                                              C. N. CLEVERT, JR.
                                              U. S. DISTRICT JUDGE

13